Case number 14-5259, ARC Initiative et al. Appellant v. Thomas L. Tidwell, Chief, U.S. Forest Service et al. Mr. Eubanks for the Appellant, Mr. Masonette for the Appellant. Thank you, Mr. Tidwell. I'd like to reserve one minute of my time for rebuttal. Before the Court is the validity of the Colorado Roadless Rules Ski Area Exclusion, which for the first time in agency history removed roadless, in fact, parcels from the nation's objective roadless inventory. Although plaintiffs have provided many grounds for reversing the District Court's decision and vacating and remanding this exclusion, today I will focus my time on three distinct arguments for why this Court may not upheld this exclusion under the most elementary of APA principles. First, in the Colorado Roadless Rule, the Forest Service applied different legal standards to two similarly situated industries without any explanation whatsoever in the record for that disparate treatment. Second, the Forest Service abandoned its longstanding and uniformly applied procedures and policies embodied in the agency's own handbook, again, without any explanation in the record. And third, despite receiving numerous public comments raising significant concerns about the ski area exclusion and the precedent it sets for national roadless inventory management, the Forest Service did not even bother to respond to those comments, let alone acknowledge the fundamental shift in management resulting from that exclusion. Under this Court's precedent, any one of those reasons renders this decision arbitrary and capricious. Turning first to the disparate treatment argument, I'd like to point the Court to JA-488, and that is the Colorado Roadless Rule preamble, which was the vehicle by which the Forest Service told the public what it was doing in this regulation. When faced with a request from the oil and gas industry to remove roadless, in fact, parcels from the objective roadless inventory because that industry viewed these parcels as parcels that had high potential for development, the Forest Service made two key findings explicitly in the preamble in rejecting that request. First, the Forest Service said, quote, roadless inventory procedures follow Forest Service handbook 1909.12 land management handbook procedures, end quote, meaning that the handbook that the service has abided by for many decades is what constrains the agency's ability and discretion when making decisions about what parcels are included in or excluded from the objective roadless inventory. The service went on in rejecting the oil and gas industry's request to say, quote, whether or not an area is identified as having high mineral potential is not an inventory criterion, end quote. So the Forest Service unambiguously and unequivocally rejected the oil and gas industry's request to remove roadless, in fact, parcels from the objective roadless inventory because the fact that an industry views parcels as having high development potential is not a relevant factor for making decisions about the roadless inventory. In the same rulemaking, the Forest Service granted a functionally indistinguishable request from the ski industry to remove roadless, in fact, parcels from the objective roadless inventory because the ski industry sought those parcels to develop because they saw them as parcels with high development potential for ski-related activities. Nowhere in this record did the Forest Service even attempt to reconcile this damning fact, and this is a situation under this Court's long precedence, which we've cited more than a half dozen, including some that members of this panel have been part of, in which the D.C. Circuit has said when two similarly situated industries as situated under a particular regulatory scheme are treated differently, and, in fact, not just treated differently but a different legal standard is applied, with no explanation in the record for why that desperate treatment occurred, this Court must vacate and remand the decision. What about the state wants one and not the other? How do we… The handbook is what governs our roadless inventory management, and the procedures and policies in that handbook govern, and thus what a state or an industry might want to develop because they think it has high development potential is not a relevant factor. This is not a criterion on which these decisions can be based. So we have to take the government at its word in the record. That's what this case is based on, not government counsel's post-doc rationalizations, not any other answers they might give, but the handbook and the procedures that have long applied and have been applied uniformly by the agency through over 40 years of managing our national forests. What the court said here, the district court, and it makes sense to me, is that there's not a disparate treatment problem here because these industries are very distinct. Well, Judge Brown, there may be some abstract differences between the oil and gas industry and the ski industry. But insofar as they are regulated pursuant to whether this handbook applies and whether roadless inventory procedures apply, they have always been treated the same as every other industry wishing to develop in our national forests. And the Forest Service has always applied the same criteria, the same procedures to every industry that wants to develop in our national forests. So the fact that a ski industry may use ski runs and an oil and gas industry may use an oil derrick is irrelevant insofar as this regulatory scheme is applied. There are essentially two questions at issue here. The first is, what lands, what parcels are in the roadless inventory? And heretofore, it's always been objective and based on the same criteria. Then there's a second question of what types of development can occur within lands that are in the inventory. What's happened here is the Forest Service has allowed impermissible factors that really can only come into play in that second question, what type of development and subject to what limitations can occur in the inventory roadless area, rather than what they've tried to do here, which is allow those political and economic considerations to, for the first time ever, remove parcels, roadless, in fact, parcels. The government concedes are not degraded from the objective roadless inventory to satisfy a request from a state or an industry. They've based it on irrelevant factors. They've admitted in the record, which, again, has to be the touchstone for this Court's decision at JA-488, that the development potential sought by an industry is not a criterion by which these decisions can be made. So it would be contrary to this Court's long line of precedent in disparate treatment cases to allow the agency to come in and deviate from its past practices, past policies. You say that it's consistently adhered to the handbook, but the handbook itself says it doesn't apply to areas designated roadless. So I'm not sure how that squares with – I recognize the portion of the preamble that you – there's a sentence there that says governed by the Forest Service handbook, and that just seems wrong. Well, Your Honor, we've made this point in our brief, and I want to be crystal clear about it. So not only is JA-488 – it's not just an offhand suggestion. It's not a stray statement by the agency. This was an explicit finding in the Colorado roadless rule preamble after a six-year rulemaking process. This is how the agency communicates to the public the reasons for what it did and why it did it. So this is a formal pronouncement in the record, which this Court has to take into consideration in making this decision. In addition to that, there are over a dozen places in the record where the Forest Service's own documents make absolutely clear that the handbook – What about – Yes. The handbook itself. They make absolutely clear that the handbook does apply to this particular situation. At JA-200, JA-201-205, JA-207, JA-213, JA-269, JA-272-75, JA-429. That's only an example of all the places where the Forest Service's own formal guidance, formal memoranda about roadless inventory procedures say this handbook applies and its criteria are what delimit the scope of which parcels can be included and are included in this inventory. So we have extensive record evidence, consistent over the course of many decades, saying that these are the criteria by which these decisions are made. And I think it's quite instructive that not one place in their briefs have the defendants been able to point to a single instance in the 40 years that this agency has managed the National Forest and the roadless inventory where the Forest Service has ever accepted a request to remove a roadless in fact parcel from the objective roadless inventory. It's never happened. In 2001, in the roadless area conservation rule, they rejected the ski industry's request to do exactly what they did here. In the 2008 Idaho roadless rule, every single acre, which was 9.3 million acres that were deemed roadless in fact, were included in the Idaho roadless inventory. This has never happened before. Roadless in fact is a description, however useful, that you've developed in this litigation. That's not a legal category that the service uses, is it? Well, roadless in fact is a description of using the criteria that the service has long used. And when they have found an area roadless in fact, meaning it meets all of the roadless criteria by which the agency has operated for 40 years, and again, which they've said in the record many times governs here, that those parcels meet all of the criteria. And if the parcels meet those criteria, every acre that has met those criteria has been placed in the inventory. And I'd just like to say very quickly you're in essence retrofitting a term to cover the prior application of the handbook and then saying that that term, roadless in fact, is the agency standard. That has not been the agency standard, at least as articulated, correct? Well, we are using the term roadless in fact, but it is true that this is a standard which they have uniformly applied over the course of many decades, and the record has extensive evidence of that. There is no time before the ski area exclusion in the Colorado roadless rule where the agency operated by any other criteria. And in fact, I think the key thing here, this is an APA case, and what we think is crucial is they have not even attempted to explain in the record why they treated these two industries differently, why they departed from the handbook criteria they admitted in over a dozen places governs, and in fact, they did not even respond to significant public comments saying, this is a fundamentally different way of managing the national forest, and we want to know what your basis for doing this is, and there was no explanation at all in the record. But isn't there a difference between deciding what goes in the inventory and actually managing these forest lands? I mean, you seem to be conflating the fact that they have criteria for deciding what goes into the inventory with what they do later. Well, the two are incredibly related. They are inextricably intertwined because the first question, the threshold question, is what is in the objective inventory? And again, the Forest Service has said in multiple places in the record that it has to first make that threshold determination. What parcels are in the inventory? Once that's been made, then the question is what types of development may occur there and subject to what limitations and prohibitions? That's what the Forest Service did in 2001. That's what it did in 2008 in the Idaho roadless rule. And then here, for the first time ever, coming in and taking a very different tact, they allowed the considerations that have never heretofore been part of this decision-making process. Well, it is not clear that the handbook even applies to what they're doing here. But if it did apply, a handbook is not law, number one, is not law. Secondly, it's the services handbook, and it's USDA that ultimately makes this decision. So they wouldn't be bound by it anyway, correct? Well, Judge Brown, as this Court has long recognized and as you have recognized in Town of Barnstable v. FAA, a decision in which you were on the panel, when an agency departs from its own handbook, that's not necessarily bringing a cause of action based on a handbook. It's one of many indicia of something being arbitrary and capricious. And in that case, the Court expressly held that when the FAA deviated from its longstanding criteria in the handbook and failed to give an explanation for that, that required vacature and remand to the agency. We believe the same treatment is due here because this case is actually far more egregious. In this case, we have a situation where we have four decades' worth of agency management. We have a handbook that the agency in more than a dozen places has said, this handbook governs this particular decision-making process. And we have the agency not responding to comments, not applying its handbook, and then taking two industries and treating one one way and one the other with no explanation at all in the record. This is, at bottom, a situation in which we have multiple ways of getting to the same place, which is finding this, as Judge Kavanaugh said in Seaworld v. Perez, another case dealing with desperate treatment, paradigmatic arbitrary and capricious decision-making in which an agency failed to grapple with fundamentally a- Sadly a dissent. In a separate opinion. Yeah, it was a dissent. It was a separate opinion. I still agree with it, though. But here we have fundamentally irreconcilable situations which the agency has not even attempted to grapple with. But you guys, there's some suggestion in the record that it's an accident of mapping, imprecise mapping, that the permitted ski areas and the overlap with roadless areas, and I'm looking, I guess, at JA-221 where there's some discussion of this, and that seems like that's yet another rationale that the service has cited, the management simplification, which might in general, I mean, management simplification could be used much more broadly, but here it seems like there's actually some historical roots for that. Well, and I'm well over my time, but I'd like an opportunity to answer this, Your Honor. So it is true that one of the reasons that was given by public commenters from the ski industry is this would avoid confusion over whether or not there's an active permit, a special use permit for ski activities in a particular location. But that's true for every other industry also. The oil and gas industry has leases that overlap with roadless areas. The coal mining industry has leases in Colorado that overlap with the roadless inventory. So the ski industry was not unique here, and that's what's key to this disparate treatment argument. Insofar as this regulatory scheme is applying to different industries, they all come in essentially in the same posture, the coal industry, the oil and gas industry. But they don't all have this. Isn't it true that they don't all have this particular situation when the roadless areas were first mapped with historical data, and now there's this much more refined GPS-based mapping, and so there's some suggestion that they just misdescribed and wanted to run the boundaries of the permanent ski area as not overlapping with the roadless areas, but they just didn't succeed? Well, again, I don't even think that's an argument that the government has given, nor could they because, again, their position, longstanding position, in the 2001 roadless area conservation rule, 2008 Idaho roadless rule, and again in this decision at JA-488, is that the decisions of whether a parcel is meeting all of the standards and criteria to be in the objective roadless inventory has nothing to do with whether a ski industry wishes to develop there, has nothing to do with whether the oil and gas industry wants to develop. It's a decision made based on the condition of a parcel on the ground. It's a factual determination based on specific criteria. And so the fact that an agency would like to develop there, the fact that they may have a lease or a permit or some other type of development approval, has absolutely no effect on the threshold question of is this parcel in the inventory. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm James Masoneth. I'll be arguing today on behalf of the federal appellees. Also with me at counsel's table is Zeke Williams, who represents the Aspen Skiing Company, who are also an appellee in this case. So in 2012, the United States Department of Agriculture adopted the Colorado Roadless Rule. That rule includes a very narrow ski area exclusion that removes 8,300 acres from the roadless inventory that are either already subject to special use permits for the ski industry or that are next to those permit areas and are allocated for ski area expansions. Forest plan. I'm sorry? Allocated by the forest plan? Yes. It doesn't authorize any expansion of ski areas, but new projects on those lands won't be subject to the roadless rules prohibitions and on tree cutting or road construction. Any new projects will still have to comply with the forest plan, and they'll still be subject to NEPA. But the NEPA analysis would differ. The NEPA analysis will differ. So the NEPA analysis will no longer have to consider the roadless, the characterization of the lands as roadless, that is, their inclusion in the roadless inventory. To the extent that these lands have roadless characteristics or undeveloped characteristics and those will be affected by the project, then the NEPA process will still have to consider the effect of the project on those issues. To the extent that some projects put forward and it will affect the roadless or undeveloped character of the land and the Forest Service fails to consider that, the parks and the other appellants can submit comments, and if the Forest Service proceeds without analyzing those issues under NEPA, it will be doing so at its own peril. Now, I think the theme of their argument, at least here today and in the briefs, is that you're treating two industries that are similarly situated desperately for political reasons or other reasons related to the state's interest. Yes. Yes, Your Honor. Let me respond to that first with the big picture and then responding specifically on the oil and gas exclusion itself. So their argument fundamentally is that this is a sea change, that this is a complete transformation of how roadless areas are managed. Now, it's important to remember that there's no statute that requires the USDA or the Forest Service to manage these lands for their roadless or undeveloped character. This is something that they do as an exercise of agency discretion to be good stewards of the land. But protection's never been absolute. They've always balanced that protection with their management of these lands for all the purposes that are authorized by Congress, and those purposes, as you know, include outdoor recreation. It would be really helpful if you would focus on the contentions that the handbook has been deemed by your client always to govern and that this, even in this rulemaking, and that they've now eschewed that and that they haven't even acknowledged and explained that they've done that and why they've done that. Right. Okay, so let me turn. My further point was only that all the roadless rules have always included exceptions for different industries. So turning now to the idea that the oil and gas exclusion— So this is not—I do want to follow up on that before you get to Judge Pillard's question, which is, so this is not a sea change in your opinion because— The National Roadless Rule has exceptions, exceptions that are tailored to different industries. The Colorado Roadless Rule has other exceptions that are tailored to other issues, water projects, power line construction. The Idaho Roadless Rule has exceptions for other kinds of projects, phosphate mining and ski areas. Now, to be clear— But they weren't roadless, in fact, right? Well, these affect lands that are in the roadless inventory. But to be clear, the state agencies have not used the same administrative tool. Those are exceptions that are in the roadless rules themselves. The agencies did not remove those lands from the roadless inventory. Exactly, and that's their— So there's an administrative difference. That's their key point, is this is the first time I believe that's been done. And as far as I know, Your Honor, that's true. That's the first time the agencies have used this administrative tool. Now, they don't argue that that's inconsistent with the law or that it was somehow unlawful to do that. They just say it was arbitrary and capricious, that we didn't explain it well enough. Now, let me turn to the oil and gas exclusion. So, first of all, central to their argument is that these exclusions are the same. That's why I had to explain why they were treating these same things differently. But, of course, the exclusions aren't the same. First of all, these 8,300 acres, 6,600 of them are already subject to special use permits for the ski industry. That's not true under the oil and gas exclusion. The oil and gas exclusion, as the USDA explained in the preamble to the regulation, they didn't grant that exclusion because there are already oil and gas leases for a lot of those lands, which is obviously an issue not relevant to the ski industry. And there's a process for applying for and being granted or denied an oil and gas lease. The record shows that the oil and gas exclusion would have been significantly larger than the mere 8,300 acres that are affected by the ski area exclusion. And as the district court noted, this is sort of an apples and oranges comparison. We're talking about oil and gas development as opposed to skiing. I know they're related, but I wasn't so much asking about the different treatment of the two industries, but about the services historical treatment of the handbook, the Wilderness Areas Handbook, as applying to roadless areas. I beg your pardon, Your Honor. I was trying to navigate both responding on oil and gas and then coming to your point. If I could just finish on oil and gas, I'll turn immediately to the handbook after that. So I think the fundamental point is to read what the USDA said about the oil and gas exclusion. What AHRQ says is that they said, well, we're precluded from granting this by the handbook. We're prohibited by the handbook. Those are AHRQ's words. The record doesn't say precluded or prohibited. Those words don't appear in it. What the USDA did was it said, we're not granting this because we don't think you need it because there's already a process for oil and gas leases. And a lot of these lands are already covered by leases. This is not important to us. Now, that section, that discussion begins with a citation to the Forest Service Handbook, which I'm about to come to. You should turn to that. Okay, I'm turning to that. Would be my advice. But if you read that citation, they're not saying that the handbook prohibits it. That's the only part I want to make. They are saying it applies, and I think that's really their main argument. No, I don't think they say it applies, Your Honor. I think if we parse the language more closely, you'll see that it doesn't. They don't say that. What they're doing here is they say the roadless inventory procedures follow the handbook. Well, no one denies that. This is not the roadless inventory. This is the Colorado roadless rule. As you pointed out yourself in your colloquy with my opposing counsel, the handbook doesn't govern the management of the roadless inventory. It doesn't get it driven to the management of roadless lands. It tells you how to build the inventory. So what is the USDA saying here? It's saying, look, let me explain to you why these oil and gas lands are in the roadless inventory to begin with. Because oil and gas isn't one of the criteria in the handbook. So when we follow the process in the handbook, it didn't matter to us that these lands have a high potential for oil and gas. That's why we put them in the inventory. That's what these sentences say. The words arcs run into them, precluded, prohibited. Those aren't here. If you parse it carefully, they're laying the groundwork to explain, look, these lands are in the inventory. If you want to get an oil and gas lease, there's a process for that. We're not going to grant this exclusion. They don't say what arcs says it is. They don't say what arcs says they said, which is that the handbook prohibited us from granting this. And, in fact, the service and the USDA have never said that. None of the documents that arcs cites, it claims that the handbook says you can't do this. They say that the 2001 National Roadless Rule says you can't do this. None of it says that. So turning to the handbook, finally, I beg your pardon, Your Honor. So, as you said, we don't have to speculate what the handbook is for. The handbook says what it's for. The handbook defines the process and criteria for identifying wilderness. The handbook only mentions the roadless inventory at all in passing. It doesn't tell you how to manage the roadless inventory. It never says, well, once something's in the inventory and it's objective roadless, in fact, you may never remove it from the inventory. It doesn't say anything about what to do with the inventory once it's generated. These lands, these ski areas, the Forest Service called the handbook. It identified these lands using the criteria in the handbook, put them in the inventory. That was the end of the relevance of the handbook to this process. Then, through this elaborate six-year notice and comment rulemaking, the service decided, as a matter of policy, to carve these 8,800 acres out of the roadless inventory. That is not in any way inconsistent with the handbook because the handbook doesn't address this issue at all. Now, opposing counsel, this is a long series of record sites. We've walked through whatever they cited in our brief. In our brief, I can't respond to them all today, but it's never been the policy of the USDA or the Forest Service that the Forest Service handbook governs either the practice of managing roadless inventory or what has to be done with the roadless inventory later. These lands have been inventoried. That's the end of the handbook's role here. The question of what to do now is an open question. What the agencies did was they balanced all of the uses that Congress has authorized, and they made a judgment that Congress has entrusted to them that these acres should be excluded because they're already being used for developed recreation or they're planned to use them for developed recreation because the state of Colorado asked for them, because skiing is important. It's an authorized use of these lands by Congress. It's a $2.6 billion a year industry in Colorado. None of that was irrational. All of that's adequate to explain why they did what they did. And in my remaining 12 seconds, I will say that opposing counsel has said they never responded to comments on the ski area exclusion. The record site is CRR 152444-46. This is part of the final environmental impact statement's response to comments section. It's hundreds of pages long, and those are the sites where the response to comments on the ski area exclusion are. Can you explain a little bit what the use is of the roadless area characteristics that are in the Federal Register? It's JA 503. How are those used? What's the function there? I'm sorry, Your Honor. High quality or undisturbed soil, sources of public drinking water, diversity of plant and animal communities, habitat for threatened animals. Just trying to get a sense of are they used to designate roadless areas, or are they used to identify the significance for NEPA purposes? Yes, they're used. So if you look into, for example, this case and its district court incarnation involved a challenge to the approval of the Burt Mountain Egress Trail. And if you look at the analysis under NEPA that the service did of that project, you'll see that they look at those criteria, what are called the roadless characteristics, to see how the project would affect them. And so in the new NEPA process, they won't be per se required to consider the effects of a project on the roadless classification, but they may, depending on the project, still be required to consider the effects on those roadless characteristics. So unless you have anything further, Your Honor. All right. Thank you. Thank you. Okay. I know you ran over, but we will give you a minute if there is something you need to respond to. Thank you, Judge Brown. Just a couple of brief points. First, I want to make clear that this is, in fact, a sea change, no matter what the government says here, and this is part and parcel of what's wrong with this decision. They refuse to even acknowledge the fundamental change in national roadless management occurring here. But if you look at JA759 in the Burt Mountain Egress Trail decision, it shows the concrete ways in which the agency refuses now to do an environmental impact statement and to look at these issues. And your fear, is this going to be replicated over and over? It will be replicated. That's the entire point of the rule. Second of all, I'd like to say the point of the rule is just to give a ski parcel in Colorado. That's the point of the ski area exclusion. That's the entire purpose of it, is to truncate deeper review. And we've explained that at the beginning of our reply brief, the first five pages. Second of all, I'd like to, again, point the Court back to two specific sites, JA200 and JA429, which explicitly say there are quotes. I don't have time, so I will just paraphrase. For a service saying in their formal memoranda and guidance that this handbook applies to roadless inventory procedures, not just the inventory itself, but also the management of it. So I would refer the Court to that. And finally, since time is now done, especially given how confounding some of the answers were from opposing counsel, and since none of the answers that were given by opposing counsel were relied on as reasons for the ski area exclusion itself in the record, which is what this Court's decision must turn on, and especially since there were comments from the public that have never been responded to. And I will point the Court to two specific comments, JA339 and JA344-47, where my clients raised not only the ski area exclusion, not only the national precedent that has now been set by the ski area exclusion sustained by this Court, but also the fact that most of these parcels, if not all of them, are roadless. In fact, they've been to them, and they are concerned about what the basis is for doing this particular action. And nowhere in this record is there any response to that at all. Why do you say national precedent, since this is under this quite anomalous Colorado rule? Yes, Your Honor. And so what the agency has done by, for the first time ever, allowing an industry to come in and ask for a particular exception not to question, too, how can we develop and subject to what limitations in an inventory roadless area, but we want an upfront exemption so that these areas lose their safeguards, their upfront safeguards as roadless, sorry, as part of inventory roadless area, as part of the inventory. And by doing that for the first time, now industries can line up, states can line up, because any state can petition the Forest Service for a state-level roadless rule of this kind. And so now what that means is that any state governor who comes in and has a preference for any particular industry or any other type of activity may now lobby for that type of exclusion, and it will be based on those particular whims rather than any kind of specified criteria, any uniformly applied criteria that have been consistently applied by the agency. Let me ask you quickly, Mr. Eubanks. I know you've said the major implication here is in how the NEPA analysis will be conducted, that it will no longer be conducted with the yardstick of roadless designation or roadless inventory character. But as I read the roadless area characteristics, all of those are issues that any NEPA analysis would take up. And presumably once there's opportunity for public comment under NEPA, any comment going to any one of those would be in order, would be something that the government would have to deal with. Is that wrong? That is wrong for two reasons, Your Honor. Number one, so while the agency may look at those characteristics standing alone, there's no requirement that the agency conduct an environmental impact statement, which is a far more detailed assessment of environmental impacts than a much lower review called an environmental assessment. And showing this in concrete form is JA759, where my clients raised in the context of the Burnt Mountain Egress Trail, our as-applied challenge, a number of roadless-related issues and said not only do you have to do an EIS, but you have to look at the roadless characteristics of this parcel. And the agency's response was, quote, an EIS is not warranted because the egress trail is no longer located in a designated inventory roadless area. So not only are they not doing an EIS now, but they don't even look at the irretrievable development activities that may have rendered a parcel not only no longer roadless in fact, but not even having the potential to be added as a permanent wilderness area by Congress in the future. So it's really truncated the NEPA review and taken away the ability of the agency to look at these issues and to disclose to the public what these impacts will be. Two quick questions. Suppose it's the first time. We agree with you it's the first time. What's wrong with the agency doing something like this for the first time in the exercise of its broad discretion granted to it by Congress in this area? Well, as the Supreme Court has said, just because an agency has broad discretion, when an agency has adopted a longstanding course of action and applied consistently procedures throughout that longstanding course of action, a deviation from it is nevertheless arbitrary and capricious. Well, that can't be right that it can never deviate and carve out an exception to a previous policy. We're changing course. Yes, and we think the record here is absolutely crystal clear about the fact that the procedures that are in place have applied for decades. They applied in the 2001 rule, the 2008 Idaho roadless rule. And so by deviating from that and not even providing an explanation in the record for that deviation, under basic state farm principles and Fox television principles, there is no basis upon which this Court can uphold the decision, especially given, again, that commenters raised these significant concerns and the Forest Service didn't even bother to respond to them. And then the second thing, big picture question, which is Congress has to draw lines all the time when they delegate a massive delegation to the agency. The agency in turn has to draw lines between skiing and oil and gas. Don't we have to be quite deferential to that kind of line drawing when there's no specific statutory guideline against which to measure that distinction? Well, Judge Kavanaugh, if the agency had drawn lines, then we'd be in a position to assess that. The agency never actually looked at the two things together. Even though it was in the same rulemaking, they said, we do not have the ability to do this for the oil and gas industry because the development potential of the parcel is not a criteria for this decision. But we're going to do the exact same thing for the ski industry. So on both my questions, I think your bottom line answer is maybe they could get away with that if they didn't explain it sufficiently. Well, we certainly think that they're precluded by their own longstanding history. But given the opportunity on remand, we would certainly submit public comments and we would argue that they are not able to do that. Any other questions? All right. Thank you. The case will be submitted.
judges: Brown, Kavanaugh, Pillard